UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROYAL INS. CO. OF AMERICA
and FORD MOTOR CO.,

        Plaintiffs,

                                      Case No. 03-72574

v.

                                        HONORABLE DENISE PAGE HOOD

ORIENT OVERSEAS CONTAINER
LINE LTD,

        Defendant/Third-Party Plaintiff,

v.

M/V "CANMAR PRIDE", her engines,
boilers, appurtenances, etc., *in rem*, CP SHIPS
(UK) LTD, CPS NO. 3 LTD and CPS NO. 5 LTD,

        Third-Party Defendants.
_____/

MEMORANDUM OPINION & ORDER REGARDING
MOTIONS FOR PARTIAL SUMMARY JUDGMENT

I.      INTRODUCTION

      Plaintiff Royal Insurance Company of America ("Royal") and Plaintiff Ford Motor Company

("Ford") bring this action for damages resulting from the loss of cargo on an overseas shipment due

to inclement weather.  Plaintiffs allege that goods were either lost at sea or delivered in such a state

of disrepair as to be unusable.

      This matter is presently before the Court on three motions for partial summary judgment.

In its Affirmative Defenses, Defendant Orient Overseas Container Line Limited ("OOCL") seeks

a limitation of liability to $500 per package, pursuant to the United States Carriage of Goods By Sea

Act, 46 U.S.C. § 1304 ("COGSA"). Plaintiffs filed a Motion for Partial Summary Judgment Striking Defendant's Sixth Affirmative Defense on January 31, 2005. Plaintiffs are seeking to strike Defendant's limitation of liability defense, arguing that the appropriate governing law in this case is the Hague–Visby Rules, which provide for greater limitation amounts than $500. Defendant filed a Motion for Partial Summary Judgment on February 3, 2005. Also on February 3, 2005, Third-Party Defendants M/V Canmar Pride, CP Ships (UK) Limited, CPS No. 3 Limited, and CPS No. 5 Limited filed a Motion for Partial Summary Judgment. Defendant and Third-Party Defendant each ask the Court to enter an order limiting their liability to $500, in accordance with COGSA.

The motions have been fully briefed and oral argument has been heard. For the reasons set forth below, the Court denies Plaintiffs' Motion for Partial Summary Judgment, and grants in part and denies in part Defendant's Motion for Partial Summary Judgment and Third-Party Defendants' Motion for Partial Summary Judgment.

## II.   STATEMENT OF FACTS

Defendant is a member of an alliance of ocean carriers which "slot-charter" space on one another's vessels. This system allows Defendant to have a certain number of containers loaded aboard the vessel of another carrier for carriage between, among other places, LeHavre, France and Montreal, Canada. In the event this system is utilized, Defendant issues its form bill of lading for the containers being carried with the identification of the other carrier's vessel as the carrying vessel.

Plaintiffs entered into a written contract entitled "Transportation Services Main Agreement" ("TSM"), wherein it was agreed that Plaintiff Ford would deliver to Defendant "numerous ocean containers said to contain [6000 units of] automatic transmissions in racks ("Ford containers") for transportation from Blanquefort, France to Le Havre, France, and thereafter to Montreal, Canada

2

for ultimate delivery to:   Louisville, Kentucky; Hazelwood, Missouri; New Hope, Minnesota;
Romulus, Michigan; Dearborn, Michigan; Westland, Michigan; and Montreal itself.   Defendant
arranged for Plaintiff Ford's shipment to be loaded on board Third-Party Defendant the M/V Canmar
Pride.   It is alleged that prior to the cargo reaching its destination, "numerous Ford containers were
lost overboard and/or damaged during heavy weather." (Compl., ¶ 18.)  More specifically, Plaintiffs
allege 4387 transmission units, stowed in 26 containers, were lost.  (Pls.' Mot. for Summ. J. at 4.)
In addition, Plaintiffs allege 840 transmission units in six other containers were damaged.  (Id.)
Plaintiff Ford made a claim pursuant to its marine insurance policy and was paid $5,700,299.20 for
its loss.

## III.    STANDARD OF REVIEW

        Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party
demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted
this to mean that summary judgment should be entered if the evidence is such that a reasonable jury
could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
The moving party has "the burden of showing the absence of a genuine issue as to any material
fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773
F.2d 62 (6th Cir. 1985).   In resolving a summary judgment motion, the Court must view the
evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d
43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).
But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after
> adequate time for discovery and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an element essential to that party's
> case, and on which that party will bear the burden of proof at trial.  In such a

3

situation, there can be "no genuine issue as to any material fact," since a complete
failure of proof concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial.  The moving party is "entitled to a
judgment as a matter of law" because the nonmoving party has failed to make a
sufficient showing on an essential element of her case with respect to which she has
the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some
evidence" of a disputed fact.  "If the [nonmovant's] evidence is merely colorable, or is not
significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50
(citations omitted).  Accordingly, a nonmovant "must produce evidence that would be sufficient to
require submission to the jury of the dispute over the fact."  *Mathieu v. Chun*, 828 F. Supp. 495, 497
(E.D. Mich. 1993) (citations omitted).

## IV.   APPLICABLE LAW & ANALYSIS

### A.   The TSM and Bills of Lading

Section 10 of the TSM provides a starting point in determining Defendant's and Third-Party
Defendants' scope of liability in this matter.  The section provides as follows:

> **10.**   **<u>SELLER LIABILITY</u>:** Except as otherwise specified in this Agreement,
> Seller's liability for loss or damage to Buyer's commodities shall be
> determined in accordance with the terms and conditions of Seller's standard
> Bill of Lading (Appendix C).  Buyer shall provide Seller with written notice
> of any claim for loss, damage, delay or misdelivery within 1 year of delivery
> or, in the case of Seller's failure to make delivery, within 1 year after a
> reasonable time for delivery has elapsed.  Seller shall provide Buyer with
> written notice of any claim for undercharges or other related billing
> adjustments within 1 year of delivery of commodities.  Seller shall not
> commence legal action against Buyer to recover any undercharges or related
> billing adjustments after 2 years of the time of delivery or the date that the
> commodities should have been delivered.

(TSM; see Def.'s Mot. for Summ. J., Ex. A) (emphasis in original).

Attached as Appendix C to the TSM is a document entitled "Seller's Bill of Lading."

4

Section 4 of the Bill of Lading reads as follows:

**4)      CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT**

(B)  Combined Transport

If carriage is Combined Transport then the Carrier undertakes to perform and/or in its own name to procure performance of the carriage from the Place of Receipt or the Port of Loading whichever is applicable to the Place of Delivery or the Port of Discharge whichever is applicable and, save as is otherwise provided for in this Bill of Lading, the Carrier's liability for loss or damage to the Goods shall be as follows:-

\* \* \*

2.      If the stage of carriage during which loss or damage occurred is known

Notwithstanding anything provided for in Clause 4(B)(1) if the stage of the carriage where loss or damage to the Goods is known then subject to the operation of Clause 4(C) which shall apply where loss or damage occurs to the Goods from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge the Carriers liability in respect of any such loss or damage occurring shall be determined as follows:-

By the provisions contained in any international convention or national law, which provisions cannot be departed from by private contract to the detriment of the Merchant, and would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of the carriage where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such international Convention or national law applicable; or

If no international convention or national law is applicable then the liability of the Carrier shall be determined pursuant to the provisions of Clause 4(B)(1).

\* \* \*

(C)      Clause Paramount

All carriage under this Bill of Lading (whether electronically produced or not) shall have effect subject to any legislation enacted in any country making the Hague or Hague–Visby Rules compulsorily applicable and in the absence of any such legislation in accordance with the Hague Rules or COGSA in the case of carriage to or from the United States of America.

5

* * *

      (D)     USA Clause Paramount (if applicable)

If carriage includes carriage to, from or through a port in the United States of America this Bill of Lading shall be subject to COGSA, the terms of which are incorporated herein and shall be paramount throughout carriage by sea and the entire time that the Goods are in the actual custody of the Carrier or its sub-contractor at the sea-terminal in the United States of America before loading onto the Vessel or after discharge therefrom as the case may be.

(TSM, App. C, Seller's Bill of Lading; see Def.'s Mot. for Summ. J., Ex. A) (emphasis in original).

Finally, the Seller's Bill of Lading also contains a choice of law provision. The section contains the following language:

**30)**     **APPLICABLE LAW**
This Bill of Lading, the Contract contained in and/or evidenced hereby, and the rights and obligations of all parties concerned in connection with the carriage of the Goods hereunder shall be governed by and construed in accordance with English law and any and all claims, suits, proceedings or disputes howsoever arising in connection with such Bill of Lading, contract, rights and obligations shall be determined in accordance with English law.
If the carriage of Goods hereunder is foreign trade to, from or through a port in the United States or if COGSA shall for any reason whatsoever apply compulsorily to the carriage of Goods hereunder then this Bill of Lading, the contract contained in and/or evidenced hereby, and the rights and obligations of all parties concerned in connection with the carriage of the Goods hereunder shall be governed by and construed in accordance with United States law and all claims, suits, proceedings or disputes howsoever arising in connection with such Bill of Lading, contract, rights and obligations shall be determined in accordance with United States law.

(TSM, App. C, Seller's Bill of Lading; see Def.'s Mot. for Summ. J., Ex. A) (emphasis in original).

### B.    Application of COGSA Limitation as a Matter of Law

Defendant and Third-Party Defendants argue that the $500 per package limitation found in COGSA applies to the instant matter as a matter of law. The statute provides, "[t]his chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign

6

trade." 46 App. U.S.C.A. § 1312. Although the Ford transmissions were loaded in France for delivery to Montreal by ship, Defendant and Third-Party Defendants maintain that COGSA applies as a matter of law because the ultimate destination was the United States.

Defendant and Third-Party Defendants rely on *Norfolk Southern Railway Co. v. Kirby*, 125 S.Ct. 385 (2004), where the Supreme Court discussed the nature of maritime contracts and the application of federal law. In *Kirby*, an Australian cargo owner sued a railroad company for damages sustained because of a train derailment in the United States. *Kirby*, 125 S.Ct. at 385. The railroad argued that its liability was limited by the bills of lading issued by the Australian freight forwarder and the ocean carrier. *Id.* The Court held that the railroad's liability was indeed limited by the bills of lading because the railroad was an intended beneficiary of the maritime contract. *Id.* at 397.

The *Kirby* decision acknowledges the complex nature of modern-day international shipping contracts, in which several modes of transportation may be called upon, including the use of ships, trucks, and trains. The Court resolved the question of how to classify such multimodal contracts, stating that, "so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce -- and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage." *Id.* at 394. Notably, *Kirby* did not go so far as to say that federal law applies whenever the final destination is the United States.

The list of cases considering whether COGSA applies as a matter of law to shipments with a final destination in the United States is short. In *Tarnawski v. Schenker, Inc.*, 2003 WL 22721987 (W.D. Wash. May 6, 2003), the district court was confronted with a case involving the shipment of

7

vodka from Poland to Seattle, Washington. *Id*. at *1. The vodka was scheduled to be shipped from Germany to Canada, then placed on a truck for ultimate delivery to Seattle. The plaintiff argued that since the vodka was shipped overseas from Hamburg, Germany to Montreal, Canada, there was no foreign sea transport to a United States port as required by COGSA. *Id.* at 3. Despite the lack of involvement of a United States port, the court in *Tarnawski* applied COGSA, stating, "this fact does not prevent COGSA from applying in this case." *Id.* The court cited *Joe Boxer Corp. v. Fritz Transp. Int'l*, 33 F. Supp. 2d 851, 855 (C.D. Cal. 1998), where the district court held that the best reading of COGSA is that it only applies when the cargo engaged in foreign trade has a point of origination or "ultimate destination" in the United States. *Id.* The court in *Tarnawski* seized upon this interpretation of the scope of COGSA in concluding as follows, "[h]ere, Tarnawski's vodka traveled by sea from a foreign point of origin with the ultimate destination of the United States, it doesn't matter what countries may have been touched en route COGSA applies as a matter of law." *Tarnawski*, 2003 WL 22721987 at *3.

While neither *Tarnawski* nor *Joe Boxer* are "controlling authority" as Defendant claims, the two cases provide guidance to this Court all the same. The situation presented in this case is strikingly similar to that facing the *Tarnawski* court. Ford contracted with Defendant for the delivery of its transmissions from France to cities across the United States. As Defendant points out, "Ford viewed this as a contract for the movement of containers from foreign places to places within the United States." (Def.'s Mot. at 2 (citing Ex. C at 21, 64); Pls.' Resp. at 2.) More tellingly, the Bills of Lading all specify the places of delivery as cities within the United States. (See Def.'s Mot., Ex. B). The Bills of Lading clearly provide the "Place of Receipt" as Blanquefort, the "Port of Loading" as Le Havre, the "Port of Discharge" as Montreal, and the "Place of Delivery" as,

8

alternatively, Louisville, Kentucky; New Hope, Minnesota; Hazelwood, Missouri; Westland, Michigan; Romulus, Michigan; Dearborn, Michigan; and Montreal.  (See Def.'s Mot., Ex. B.)

The Bill of Lading also clearly outlines Defendant's responsibility: "the Carrier undertakes to perform and/or in its own name to procure performance of the carriage from the Place of Receipt or the Port of Loading whichever is applicable to the Place of Delivery or the Port of Discharge whichever is applicable."  (Bill of Lading Section 4(B); TSM, App. C, Seller's Bill of Lading; see Def.'s Mot. for Summ. J., Ex. A & Ex. B.)  Here Defendant's responsibility began in the specified Place of Receipt, Blanquefort, and ended in the specified Places of Delivery.  There is no allegation that Plaintiffs bargained for using Montreal as the Port of Discharge.  While the Parties debate whether Defendant would have been able to use a Port of Discharge in the United States without notice to Ford, it seems clear to the Court that the issue of limited liability cannot turn on the seemingly insignificant and unbargained for decision of where to discharge the Ford transmissions en route to the United States.  Exhibit B of the TSM contains a list of Defendant's Rates and Charges for various transatlantic voyages.  The possibilities for the Port of Discharge to various final destinations within the United States are New York, Houston, Charleston, Norfolk, and, of course, Montreal.  (Def.'s Mot. for Summ. J., Ex. A.)  It would be strange indeed to have Defendant's ability to limit its liability vary to such a great degree simply based on the Port of Discharge utilized in transporting shipments to final destinations within the United States.  Equally odd would be the proposition that several Ford shipments – potentially using different Ports of Discharge – would vary in liability to Defendant.  Such a result strikes this Court as an improperly narrow reading of COGSA.

*Acciai Speciale Terni USA, Inc. v. M/V Berane*, 182 F. Supp. 2d 503 (D.Md. 2002) supports

9

this Court's finding. *Acciai* held that COGSA, rather than the Hague–Visby Rules as adopted by Italy, set the limit of the potential liability of a carrier and charterer of the carrying vessel for damage to cargo shipped from Italy to the United States. The court further found that the general paramount clause was insufficient to demonstrate an agreement by the carrier to accept the Hague–Visby liability limits on shipments to the United States because there was no evidence to suggest that the shipper paid anything extra for an increase in the carrier's limited liability. Finally, the *Acciai* court held that the bill of lading contained a clause stating that if the bill of lading was subject to COGSA, then COGSA would govern it.

Though the present case does not concern a direct transatlantic shipment to the United States, several paralells may be drawn from *Acciai*. The most important parallel is that Ford does not appear to have paid anything extra for any alleged increase in Defendant's liability resulting from the decision to use Montreal as the Port of Discharge. Second, the Bill of Lading presently at issue can only be read harmoniously if COGSA is held to apply.

As the Second Circuit noted in *Hartford Fire Ins. Co. v. Orient Overseas Container Line*, 230 F.3d 549 (2d Cir. 2000), the TSM and the Bill of Lading are not "model[s] of careful draftmanship." *Id.* at 556. Here there are several provisions of the agreements seemingly applicable because of the loss of and damage to the Ford transmissions. First, Section 10 of the TSM, entitled "Seller Liability," refers generally to the terms and conditions set forth in the Bill of Lading. Examining the Bill of Lading demonstrates that there are two applicable choice-of-law provisions, as was the case in *Hartford*. Section 4 of the Bill of Lading invokes "the provisions contained in any international convention or national law . . . ." (Section 4(B)(2) of the Bill of Lading; Def.'s Mot. for Summ. J., Ex. A.) The Clause Paramount makes the Hague–Visby Rules applicable except

10

in the case of carriage to or from the United States – in which case COGSA applies.  (Section 4(C) of the Bill of Lading.)  It is important to note that the Clause Paramount requires COGSA if the "carriage" is to or from the United States, not only via the use of a United States seaport.  The agreements entered into between Plaintiffs and Defendant clearly contemplate delivery to cities in the United States.  Defendant was obligated to transport the Ford transmissions to these locations, using a variety of transportation methods including the necessary transatlantic journey.

Section 4(D) of the Bill of Lading is labeled "USA Clause Paramount (if applicable)." Predictably, the Bill of Lading does not specify when this alternative clause paramount actually applies.  Section 4(D) contains more specific language than that found in Section 4(C); the USA Clause Paramount requires the application of COGSA when the carriage "includes carriage to, from or through a port in the United States of America. . . ."  Plaintiffs seek a close reading of Section 4(D), arguing that the shipment presently at issue did not involve carriage to, from or through a port of the United States.  Such a reading, while plausible, does not persuade the Court in this context.

The second choice of law provision found in the Bill of Lading is Section 30, entitled "Applicable Law."  Although the first paragraph of Section 30 invokes English law as the choice of law, the second paragraph excepts situations where "the carriage of Goods hereunder is foreign trade to, from or through a port in the United States or if COGSA shall for any reason whatsoever apply compulsorily to the carriage of Goods hereunder . . . ."  The Bill of Lading thus clearly contemplates that COGSA may apply even when the carriage is not to, from or through a United States port per se.  To read the contract otherwise would be to make this provision seemingly superfluous.  "In a situation of potential contract ambiguity, an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the

11

writing useless or inexplicable." *Hartford*, 230 F.3d at 558 (citations omitted).  As noted above,

COGSA applies here because the transmissions were destined for the United States.  Defendant and

Third-Party Defendants are thus entitled to the $500 per package limitation contained in COGSA.


### B.    Package Limitation

Having found COGSA applicable, the Court must also decide what constitutes a "package"

for purposes of the limitation of liability.  COGSA provides as follows:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or
> damage to or in connection with the transportation of goods in an amount exceeding
> $500 per package lawful money of the United States, or in case of goods not shipped
> in packages, per customary freight unit, or the equivalent of that sum in other
> currency, unless the nature and value of such goods have been declared by the
> shipper before shipment and inserted in the bill of lading.  This declaration, if
> embodied in the bill of lading, shall be prima facie evidence, but shall not be
> conclusive on the carrier.

46 U.S.C.A. § 1304(5).  In order to determine what constitutes a "package" under COGSA, courts

consider the following four factors: (1) the parties' contractual agreement in the bill lading; (2)

whether the COGSA package is the result of some amount of preparation for purpose of

transportation, which also facilitates handling; (3) a container can be considered a COGSA package

only in light of a clear agreement to that effect between the parties; and (4) when goods are placed

in containers without being described as separately packaged, they are classified as "goods not

shipped in packages" for COGSA purposes, absent agreement otherwise.  *See Groupe Chegaray/V.*

*De Chalus v. P&O Containers*, 251 F.3d 1359 (11th Cir. 2001).

Defendant and Third-Party Defendants argue that a "package" for purposes of this case

should be defined as each container, not each of the individual Ford transmissions contained therein.

As support for their contention, Defendant and Third-Party Defendants cite the Bill of Lading, which

12

contains the following language: "TOTAL NO. OF CONTAINERS/PACKAGES RECEIVED & ACKNOWLEDGED BY CARRIER FOR THE PURPOSE OF CALCULATION OF PACKAGE LIMITATION (IF APPLICABLE): 5 CONTAINER(S)/PACKAGE(S)."   (Def.'s Mot., Ex. B) (emphasis in original).  Courts hesitate to simply apply such language found in bills of lading.  *See, e.g., Monica Textile Corp. v. S.S. TANA*, 952 F.2d 636, 641 (2d Cir. 1991) (Court takes a "critical look" at bill of lading clauses purporting to define container as "package", and casts a "jaundiced eye" upon language purporting to embody any such definitional agreement).  This Court does not look upon the language contained in the Bill of Lading as determinative of the issue of how many COGSA packages are at issue.

Plaintiffs correspondingly argue that each Ford transmission should be deemed a "package" under COGSA.  The Court finds this interpretation also incorrect.  The declaration of Alan Dunn of Ford makes clear that the racks – not the smaller number of containers or the larger number of individual transmissions – constitute "packages" within the meaning of COGSA. (See Def.'s Reply Br. at 4–5.)  Dunn explained that "the racks used by the shipper Ford Aquitane to carry the Ford transmissions from France to the United States are 'articles of transport,' as their sole function is to provide an accessible and practical means of transport for numerous transmissions during intercontinental shipments."  (Id.)  The racks here can be appropriately deemed the result of some amount of preparation for purpose of transportation, which also facilitates handling.  *P&O Containers*, 251 F.3d at 1359.

### C.   Defendant's Motion for Summary Judgment Concerning Proof of Physical Damage

In addition to the above, Defendant seeks summary judgment with respect to the damaged Ford transmissions.[1]  (Def.'s Mot. for Partial Summ. J. at 25.)  Defendant asserts that many of the allegedly damaged Ford transmissions showed no physical damage and were not tested to confirm that they were damaged.  (Id.)  Third-Party Defendants also raise this issue in their Motion.  (See Third-Party Defs.' Mot. for Partial Summ. J. at 18–19.)  Third-Party Defendants cite the lack of visible damage to the Ford transmissions, and Ford's alleged lack of proof of non-visible damage to the transmissions.  (Id.)

In response, Ford notes the Court's November 8, 2004 Initial Scheduling Order on Package Limitation Issue Only.  Ford argues that only the package limitation issue had been agreed upon by the Parties and the Court to be briefed and heard.  (Pls.' Resp. to Third-Party Defs.' Mot. at 1.)  In their very own Motion, Third-Party Defendants concede this fact: "[t]he present Motion by agreement of the parties and the Court is confined to the applicability of COGSA's package limitation."  (Third-Party Defs.' Mot. at 2, n.1.)  The Court agrees that the issue of the allegedly damaged Ford transmissions has not been properly raised by Defendant or Third-Party Defendants at this juncture.  This portion of Defendant's and Third-Party Defendants' Motion is therefore dismissed without prejudice.

## V.  CONCLUSION

For the reasons set forth above, the Court grants Defendant's and Third-Party Defendants' Motions for Partial Summary Judgment on the issue of the limitation of liability only.  The Court denies Plaintiffs' Motion for Partial Summary Judgment.

---

[1]  While a number of Ford transmissions were irretrievably lost overboard during the tran-atlantic shipment, a number of Ford transmissions arrived in Montreal damaged.

14

Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment Striking Defendant's Sixth Affirmative Defense **[Docket No. 39, filed January 31, 2005]** is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment **[Docket No. 43, filed February 3, 2005]** is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Third-Party Defendants' Motion for Partial Summary Judgment **[Docket No. 45, filed February 3, 2005]** is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Parties appear for a status conference on November 8, 2005, at 3:30 p.m.


                                        s/ DENISE PAGE HOOD
                                        DENISE PAGE HOOD
                                        United States District Judge

DATED: September 29, 2005


                                        s/Denise Page Hood
                                        Denise Page Hood
                                        United States District Judge

Dated:  September 29, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2005, by electronic and/or ordinary mail.

                                        s/William F. Lewis
                                        Case Manager

15